IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN PADAVAN<br>325 Parrish St.<br>Wilkes Barre, PA 18702 : | CIVIL ACTION |
| Plaintiff, :<br>v. : | DOCKET NO.: |
| INVENTIV HEALTH, INC. :<br>500 Atrium Dr. :<br>Somerset, NJ 08873 :<br>and :<br>VALEANT PHARMACEUTICALS :<br>INTERNATIONAL, INC. :<br>400 Somerset Corporate Blvd. :<br>Bridgewater, NJ 08807 :<br>and :<br>ORAPHARMA, INC. :<br>400 Somerset Corporate Blvd. :<br>Bridgewater, NJ 08807 :<br>and :<br>BAUSCH & LOMB INC. :<br>400 Somerset Corporate Blvd. :<br>Bridgewater, NJ 08807 :<br>:<br>Defendants. : | **JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Karen Padavan (*hereinafter* referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. This action has been initiated by Plaintiff against Defendants for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 USC §§ 12101 *et. seq.*) and the

Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she was unlawfully terminated by Defendants. As a direct consequence of Defendants' unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under the laws of the United States.

3. This Court may properly maintain personal jurisdiction over Defendants because their contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because substantially all of the events or omissions giving rise to the claims set forth herein occurred in this judicial district, in addition, venue is properly laid in this district because Defendants are entities deemed to reside in this district as a result of their contacts.

5. Plaintiff is proceeding herein under the ADA and has properly exhausted her administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC")[2] and by filing the instant lawsuit within ninety (90) days of receiving a Notice of Right to Sue letter from the EEOC.

---

[1] Plaintiff will move to amend the instant Complaint to include violations of the PHRA after administrative remedies are properly exhausted according to that Act. Such claims will identically mirror Plaintiff's federal claims asserted herein under the ADA.

[2] In conjunction with the EEOC filing, Plaintiff dual-filed a Complaint for violations of the PHRA, in accordance with procedure set by the EEOC and Pennsylvania Human Relations Commission ("PHRC").

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the above-caption.

8. Defendant InVentiv Health, Inc. (*hereinafter* "InVentiv") is a provider of healthcare and pharmaceutical consulting to biopharmaceutical clients, incorporated under the laws of Delaware.

9. Defendant Valeant Pharmaceuticals International, Inc. (*hereinafter* "Valeant") is a publically-traded multinational pharmaceutical company, incorporated under the laws of Canada, with a number of U.S.-based subsidiaries and affiliates.

10. Defendant Orapharma, Inc. (*hereinafter* "Orapharma") develops and commercializes pharmaceutical products for oral health, and has been a subsidiary of Valeant since in or about 2012.

11. Defendant Bausch & Lomb, Inc. (*hereinafter* "Bausch & Lomb") provides pharmaceuticals and supplies for eye health, and has been a subsidiary of Valeant since in or about August of 2013.

12. Throughout the time of Plaintiff's employment giving rise to this action, (1) her supervisors designated themselves as regional managers of "OraPharma/inventive" verbally and through correspondence; (2) Valeant and Bausch & Lomb representatives trained and/or evaluated Plaintiff; and (3) upon information and belief, OraPharma and Bausch & Lomb were fully controlled subsidiaries of Valeant.

13. Upon information and belief, because of their interrelation of operations, common ownership or management, centralized control of labor relations, common ownership or financial

controls, and other factors - during Plaintiff's employment – InVentiv, Valeant, Orapharma, and Bausch & Lomb (*hereinafter* collectively referred to as "Defendants") were sufficiently interrelated and integrated in their activities, labor relations, ownership and management that they may be treated as a single, joint and/or integrated employer for purposes of the instant action.

14.  At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

15.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

16.  In or about February of 2015, Plaintiff was hired by Defendants as an Account Manager.

17.  Plaintiff worked for Defendants in the region of Wilkes-Barre/Scranton, Pennsylvania.

18.  Plaintiff has and continues to suffer from serious health conditions, including but not limited to diabetes and anxiety.

19.  Plaintiff was, and continues to be, substantially limited in her ability to perform major life activities as a result of her aforesaid health conditions, which require her to regulate her blood sugar and can (at times) cause panic attacks and fainting.

20.  Despite Plaintiff's health conditions, she was still able to perform the duties of her job well; however, periodically Plaintiff required reasonable accommodations to care for and treat her health conditions, including but not limited to intermittent time off from work.

21. In or about July of 2015, Plaintiff began to be supervised by a new manager, one Dan Keyser (*hereinafter* "Keyser").

22. In or about July of 2015, Plaintiff informed Keyser that she had diabetes.

23. Shortly after Keyser learned of Plaintiff's aforesaid health conditions, he began to treat Plaintiff in a hostile and harassing manner, including but not limited to pretextually issuing Plaintiff a negative field contact report (even though Keyser had only been Plaintiff's manager for a few short weeks and had not spent enough time with Plaintiff in order to adequately evaluate her work).

24. During the time Keyser supervised Plaintiff, Keyser would question Plaintiff specifically about her health conditions, but in a negative tone and not out of concern.

25. In or about September of 2015, Plaintiff notified Human Resources (and Keyser) again about additional health conditions that Plaintiff was suffering from, including but not limited to anxiety, because of a flare-up of symptoms Plaintiff had been experiencing, including panic attacks.

26. On or about October 8, 2015, (less than one month after Plaintiff informed Keyser of her additional health conditions, i.e. anxiety), Keyser placed Plaintiff on a Performance Improvement Plan ("PIP"). Such PIP was completely pretextual and just another example of the discriminatory harassment that Keyser was subjecting Plaintiff to, as:

   a. Prior to the aforesaid PIP, Plaintiff had not previously been on a PIP in her approximately eight (8) months with the company and she had not been warned she was getting placed on a PIP in this instance; and

   b. The same day Keyser gave Plaintiff the PIP, he said to her "normally when I put someone on a Performance Improvement Plan, they just quit" (implying his desire

for Plaintiff to separate from the company whether it be through voluntary resignation or termination).

27. During the time period set forth by the PIP (discussed *supra*), Keyser continued to harass Plaintiff and attempted to impede her job performance by doing things such as giving her increased "busywork" (compiling lists, reports, etc.), which in turn, began taking time[3] away from Plaintiff being able to make sales (the job duty she was chiefly being evaluated for under the PIP).

28. In or about October of 2015, after being put on the PIP (discussed *supra*), Plaintiff needed and therefore took approximately one week off from work due to her aforementioned health conditions.

29. On or about November 23, 2015, Keyser terminated Plaintiff, using the PIP as the pretextual basis for Plaintiff's termination.

30. Plaintiff therefore believes and avers that she was subjected to a hostile work environment, given negative field contact reports, placed on a PIP and later terminated because of her actual/perceived and/or record of disability and/or in retaliation for requesting a reasonable accommodation in the form of time off from work.

**First Cause of Action**
**Violations of the Americans with Disabilities Act, as Amended ("ADA")**
([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; [3] Hostile Work Environment)
-Against All Defendants-

31. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[3] Plaintiff was hired as part-time and only supposed to work 24 hours a week. All (or nearly all) of the other Account Managers Keyser oversaw were full time.

6

32. Plaintiff suffered from qualifying health conditions under the ADA which affected her ability (at times) to perform some daily life activities including, but not limited to, working, focusing, breathing, and performing manual tasks.

33. Plaintiff's aforesaid health conditions were documented and known by Defendants' management, including but not limited to Keyser and Defendants' HR department.

34. In or about September of 2015, Defendants' knew Plaintiff was experiencing flare-up symptoms of her anxiety (including panic attacks).

35. Defendant's discriminated against Plaintiff because of her disabilities as, (1) less than a month after Plaintiff told Defendants (including Keyser) she had anxiety and was experiencing panic attacks, Keyser put Plaintiff on a PIP without warning and subsequently terminated her; (2) rather than try and assist Plaintiff with improving her alleged performance deficiencies, Keyser instead gave Plaintiff *more* menial and tedious work to do (under stress of the PIP), while knowing Plaintiff was only supposed to work 24 hours a week; and (3) Defendants were trying to get Plaintiff to separate from her employment soon after disclosing her health conditions, as evidenced by Keyser's statement "normally when I put someone on a Performance Improvement Plan, they just quit."

36. Based on the foregoing, Plaintiff believes and therefore avers that she was subjected to a hostile work environment, given negative field contact reports, placed on a PIP, and later terminated because of: (1) her known and/or perceived health problems; (2) her record of impairment; and/or (3) in retaliation for requesting and taking time off from work to care for and treat for her health conditions (a reasonable accommodation).

37. These actions as aforesaid constitute violations of the ADA, as amended.

7

WHEREFORE, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

                                        Respectfully submitted,

                                        **KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Road
Two Greenwood Square
Building 2, Ste. 128
Bensalem, PA 19020
(215) 639-0801

Dated: August 16, 2016